SCHEFFER, RESPONDENT, *v.* CHICAGO, MILWAUKEE & PUGET SOUND RY. CO., APPELLANT.

(No. 3,733.)

(Submitted January 27, 1917.  Decided February 23, 1917.)

[163 Pac. 565.]

*Railroads—Killing Livestock—Fences—Complaint—Estoppel— Statutory Construction.*

Statutory Construction—Rule.
　　1.　In construing a statute, the words employed must be given their ordinary meaning, unless it is made apparent from their character, or the context or subject, that a different one was intended.
　　[As to rules for the construction of statutes, see note in 12 Am. St. Rep. 826.]

Same.
　　2.　Where the language of a statute is plain, simple, direct and unambiguous, construction by the courts is not called for—it construes itself.

Railroads—Livestock—Fences—Gates—Duty to Keep Closed.
　　3.　Where for the convenience of a ranch owner a railroad company constructed a private crossing and a gate in its right of way fence, the company was, under section 4308, Revised Codes, in duty bound to see that it was not left open by persons passing through it; failure in this respect constituting negligence *per se.*

Same—Killing Livestock—Complaint.
　　4.　In an action against a railroad company for damages sustained by plaintiff in killed and injured cattle because of the company's negligence in failing in its duty above adverted to, plaintiff need not allege or prove that defendant knew or should have known that the gate had been left open.

Same—Estoppel—When not Available.
　　5.　Defendant company not appearing to have been misled to its prejudice by anything said or done by plaintiff, the claim that he was estopped by his conduct to claim damages was without merit.

*Appeal from District Court, Missoula County; John E. Patterson, Judge.*

ACTION by Peter Scheffer against the Chicago, Milwaukee & Puget Sound Railway Company.  From a judgment for plaintiff and an order denying it a new trial, defendant appeals. Affirmed.

Cause submitted on briefs of counsel.

*Mr. Henry C. Stiff,* for Appellant.

*Mr. A. J. Violette,* for Respondent.

Counsel for appellant states in his brief, "the gates of course constitute a part of such fences," which counsel for respondent admits. (*Mackie* v. *Central Railroad of Iowa,* 54 Iowa, 540, 6 N. W. 723.) But if a gate is part of a fence, an open gate, so long as it remains open, is not a good and legal fence, nor the proper maintenance thereof as required by our statute. Upholding respondent's contention that the railway company is required to keep such gates closed, we cite the following cases: *Wabash Ry. Co.* v. *Williamson,* 104 Ind. 154, 3 N. E. 814; *Manwell* v. *Burlington C. R. & N. Ry. Co.,* 89 Iowa, 708, 57 N. W. 441; *Duncan* v. *St. Louis, I. M. & S. Ry. Co.,* 91 Mo. 67, 3 S. W. 835; *Galveston, H. & S. A. Ry. Co.* v. *Wessendorf* (Tex. Civ.), 39 S. W. 132.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

The defendant company's railroad runs west from Huson, Montana, and immediately north of the residence of Dolphis Tetreault. The railroad right of way was fenced on both sides, thereby cutting off access from Tetreault's residence to the public road. To accommodate Tetreault the railway company constructed a private grade crossing and a gate in its right of way fence on either side. One of these gates was left open by some unknown person and plaintiff's cattle wandered through on to the railroad track, and some were killed and others injured. Plaintiff recovered a judgment in the lower court and the railway company appeals therefrom and from an order denying its motion for a new trial.

1. The principal question presented is: May plaintiff maintain his judgment upon the facts stated? Or, stated differently, is it necessary for plaintiff to allege and prove that the railway company knew the gate was open or that it was open for such a length of time that notice may be imputed to it?

In 1891 the legislature enacted a statute which required every railway company operating in this state to fence its tracks

against domestic animals (Laws 1891, p. 267), or respond in damages for any such animals killed or injured by reason of the want of such fence. In *Beckstead* v. *Montana Union R. Co.,* 19 Mont. 147, 47 Pac. 795, it was said that this statute was substantially the same as one in Iowa, and under the Iowa statute it had been held that after complying with its terms in the first instance, the railroad company could be held only to the exercise of reasonable care to keep the fencing in repair and gates and bars closed. (*Henderson* v. *Chicago, R. I. & P. R. Co.,* 43 Iowa, 620.)

In 1895 the Codes were adopted. Section 950, Civil Code, required every railroad corporation operating in this state to make and maintain a good and sufficient fence on both sides of its tracks, and in case any such corporation did not do so, it should be liable to the owner for any domestic animal killed or injured by its trains unless the accident occurred through the fault or neglect of the owner of the animal. At the same time section 951 was enacted, as follows: "Every railroad corporation or company operating any railroad, or branch thereof, within the limits of this state, which shall negligently injure or kill any horse, mare, gelding, filly, jack, jenny or mule, or any cow, heifer, bull, ox, steer, or calf, or any other domestic animal, by running any engine or engines, car or cars, over or against any such animal, shall be liable to the owner of such animal for the damages sustained by such owner by reason thereof. The killing or injury shall be *prima facie* evidence of negligence on the part of such corporation or company." This section declares the rule of reasonable care and renders a railroad corporation liable for negligence in killing or injuring domestic animals without reference to the place where the accident occurs. If it was intended to require proof of negligence in an action brought under section 950, that section is meaningless, for the next section covers the subject more fully. If it was intended to make a failure to build and maintain a good and sufficient fence *prima facie* evidence of negligence only, the lawmakers

chose very inapt language to express their meaning. They experienced no difficulty in expressing the idea in section 951.

In construing a statute we are required to give to the words [1] employed their ordinary meaning, unless it is made apparent from their character or the context or subject that a different meaning was intended. (*State ex rel. Anaconda C. M. Co.* v. *District Court,* 26 Mont. 396, 68 Pac. 570, *State* [2] *ex rel. Gillett* v. *Cronin,* 41 Mont. 293, 109 Pac. 144.) If the language is plain, simple, direct and unambiguous, it does not call for construction by the courts. It construes itself. (*Osterholm* v. *Boston & Mont. C. C. & S. Min. Co.,* 40 Mont. 508, 107 Pac. 499.) Applying these rules in the light of the [3] provisions of section 951, and it is apparent that it was the intention of the legislature in enacting section 950 to change the rule of liability theretofore recognized and applied, and to require a railroad company at its peril to make and maintain a good and sufficient fence on both sides of its tracks or respond in damages for domestic animals killed or injured by reason of its failure to do so, unless the owner of the animals is at fault. The statute is not satisfied by the construction of a fence sufficient to meet its requirements. The continuing obligation is imposed to maintain such fence in a condition to effectuate the purpose intended. With certain amendments not involved here, sections 950 and 951 were brought forward into the Codes of 1907 as sections 4308 and 4309, respectively, and state the law upon the subject to-day.

The gate in question was a part of the right of way fence. The statute imposed upon the railway company the duty to see that it was kept closed (*Wabash Ry. Co.* v. *Williamson,* 104 Ind. 154, 3 N. E. 814), and the failure to keep it closed was negligence *per se.*

It was not necessary to allege or prove that the company [4] knew or in the exercise of reasonable care should have known that the gate was left open. If the rule is a harsh one, relief from its operation must be sought in the legislature. We

have given to the language of section 4308 (950, Civil Code) the only meaning of which it is apparently susceptible.

It is not necessary to determine whether plaintiff must negative fault on his part or whether the negligence of the plaintiff is an affirmative defense, for in this instance the plaintiff assumed and maintained the burden in his pleading and proof.

2. Some contention is made that the plaintiff is estopped [5] by his conduct to claim damages in this instance; but there is not anything in this record to indicate that the railway company was misled to its prejudice by anything said or done by the plaintiff. (*Yellowstone County* v. *First Trust & Savings Bank,* 46 Mont. 439, 128 Pac. 596.)

3. We have examined the specifications of error predicated upon the admission and rejection of evidence and upon the giving of certain instructions, but fail to discover prejudicial error.

The judgment and order are affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SANNER concur.